IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

U.S. PHARMACEUTICAL
CORPORATION,

    Plaintiff,

      v.

                               CIVIL ACTION FILE
                               NO. 1:09-CV-2050-TWT

BRECKENRIDGE
PHARMACEUTICAL, INC., et al.,

    Defendants.

ORDER

    This is an action for trade dress infringement.  It is before the Court on the Defendants' Motions to Dismiss [Doc. 9 & 10].  For the reasons set forth below, the Court GRANTS the Defendant Runsdorf's Motion to Dismiss and DENIES the Defendants' Joint Motion to Dismiss.

I.  Background

    The Plaintiff, U.S. Pharmaceutical Corporation ("USPC"), sells vitamin and mineral supplements.  Since May 2006, USPC has sold vitamin supplements under the TANDEM OB trademark.  These supplements are designed to provide nutrition to women throughout pregnancy and during the postnatal period.  Products sold under the TANDEM OB mark have an elongated, cylindrical shape that is half-blue and

half-pink.  The words "Tandem OB" are printed on the blue half of the capsule. Further, two blue bands encircle the pink half of the capsule.  The word "US" is printed multiple times on these blue bands.  The appearance of these capsules constitutes the TANDEM OB trade dress.

USPC also sells a product designed to relieve allergy symptoms under the NOREL SR trademark.  Products sold under this mark have a triangular shape that is white on one side and yellow on the other.  The letters "US" are printed on one side of the tablet.  The appearance of these tablets constitutes the NOREL SR trade dress. USPC claims it has spent thousands of dollars promoting the TANDEM OB and NOREL SR products.

Defendant Breckenridge Pharmaceutical, Inc. ("Breckenridge") also sells allergy medications and nutritional supplements.  Defendant Laurence Runsdorf is the president of Breckenridge.  Breckenridge markets a prenatal supplement under the VINATE IC name.  VINATE IC products have an elongated, cylindrical shape that is half-blue and half-pink.  The letter "B" is printed on the blue portion of VINATE IC capsules.  Breckenridge also sells a product designed to relieve allergy symptoms under the TRITAL SR name.  The TRITAL SR product has a triangular shape and is yellow in color.

USPC filed this action against Defendants Breckenridge and Runsdorf, asserting claims for trade dress infringement under § 43 of the Lanham Act, as well as state law claims for unfair competition, deceptive trade practices, and trade dress dilution.  See 15 U.S.C. §§ 1051 *et seq*.; O.C.G.A. §§ 10-1-370 *et seq*.; O.C.G.A. § 23-2-55; O.C.G.A. § 10-1-451(b).  USPC claims that the Defendants' VINATE IC and TRITAL SR products confuse the public by imitating the TANDEM OB and NOREL SR trade dresses.  In response, Defendant Runsdorf has filed a Motion to Dismiss for Lack of Personal Jurisdiction  [Doc. 9].  Runsdorf asserts that he did not participate in the design, nor was he aware of the shape or color of either the VINATE IC or TRITAL SR supplements.  Thus, Runsdorf argues that he had no contacts with Georgia sufficient to establish personal jurisdiction over him.

Breckenridge and Runsdorf have also filed a Joint Motion to Dismiss for Failure to State a Claim [Doc. 10].  In their motion, the Defendants note the distinctions between the trade dresses of their products and the trade dresses of products marketed by USPC.  The Defendants argue that these distinctions make it implausible that the public would confuse their products for those sold by USPC.

## II.  Legal Standards

A.      Motion to Dismiss for Lack of Personal Jurisdiction

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant."  Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).  The plaintiff establishes a prima facie case by presenting "enough evidence to withstand a motion for directed verdict."  Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).  A party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions . . ."  Walker v. NationsBank of Florida, 53 F.3d 1548, 1554 (11th Cir. 1995).  The facts presented in the plaintiff's complaint are taken as true to the extent they are uncontroverted.  Foxworthy v. Custom Tees, Inc., 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995).  If, however, the defendant submits affidavits challenging the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction.  Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1257 (11th Cir. 2010); Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).  If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits,

the court must construe all reasonable inferences in favor of the plaintiff. <u>Madara</u>, 916 F.2d at 1514.

B.   <u>Motion to Dismiss for Failure to State a Claim</u>

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).  A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007) (citations and quotations omitted).  In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff.  <u>See</u> <u>Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.</u>, 711 F.2d 989, 994-95 (11th Cir. 1983).  Generally, notice pleading is all that is required for a valid complaint.  <u>See</u> <u>Lombard's, Inc. v. Prince Mfg., Inc.</u>, 753 F.2d 974, 975 (11th Cir. 1985), <u>cert. denied</u>, 474 U.S. 1082 (1986).  Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (<u>citing</u> <u>Twombly</u>, 550 U.S. at 555).

## III.  Discussion

### A.    Runsdorf's Motion to Dismiss for Lack of Personal Jurisdiction

The Defendant Runsdorf moves to dismiss the Plaintiff's claims against him under Rule 12(b)(2) because he is not subject to personal jurisdiction in Georgia.  To determine whether a nonresident defendant is subject to personal jurisdiction, the court must perform a two-part analysis.  Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1257-58 (11th Cir. 2010).  First, the court must determine whether the exercise of personal jurisdiction is proper under the state's long-arm statute.  Id.  Next, the court must determine whether there are sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment.   Id.; International Shoe Co. v. Washington Office of Unemployment Comp. and Placement, 326 U.S. 310 (1945).

The Georgia long-arm statute provides, in pertinent part:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of the state, if in person or through an agent, he or she (1) Transacts any business within the state;

O.C.G.A. § 9-10-91.  The Georgia Supreme Court has held that this portion of the long-arm statute does not extend to the maximum extent permitted by procedural due process.  Innovative Clinical & Consulting Servs., LLC v. First Nat. Bank of Ames,

279 Ga. 672, 675 (2005).  "Instead, the long-arm statute must be read literally."
Diamond Crystal Brands, 593 F.3d at 1259.  "Accordingly, subsection (1) long-arm
jurisdiction in Georgia expressly depends on the actual transaction of business-the
doing of some act or consummation of some transaction-by the defendant in the state."
Id. at 1260.  Then, Federal due process requires a showing of "minimum contacts"
sufficient to ensure that "maintenance of the suit does not offend traditional notions
of fair play and substantial justice."  International Shoe, 326 U.S. at 316; Diamond
Crystal Brands, 593 F.3d at 1261.  Thus, a defendant is subject to personal jurisdiction
in a forum only where he has "fair warning" that he may be haled into court there.
Shaffer v. Heitner, 433 U.S. 186, 218 (1977).  "This 'fair warning' requirement is
satisfied if the defendant has 'purposefully directed' his activities at residents of the
forum, and the litigation results from alleged injuries that 'arise out of or relate to'
those activities."  Licciardello v. Lovelady, 544 F.3d 1280, 1284 (11th Cir. 2008)
(citations omitted).

     USPC argues that Runsdorf has sufficient contacts with Georgia because he
"intentionally sought to injure a Georgia domiciliary."  (Pl.'s Memo. in Opp'n to
Def.'s Mot. to Dismiss, at 7.)  USPC notes that "rather than targeting Runsdorf in his
capacity as a corporate officer, the paragraphs from USPC's Complaint . . . allege that
Runsdorf himself personally participated in tortious acts manifesting themselves in

Georgia."  (Pl.'s Memo. in Opp'n to Def.'s Mot. to Dismiss, at 10.)  The Plaintiff contends that by intentionally copying USPC's TANDEM OB and NOREL SR trade dresses, "Runsdorf himself personally participated in tortious acts manifesting themselves in Georgia and that have damaged USPC in Georgia."  (Id.)

In support of its argument, the Plaintiff cites Licciardello v. Lovelady, 544 F.3d 1280 (11th Cir. 2008).  In Licciardello, the Eleventh Circuit held that personal jurisdiction was proper where the defendant "committed an intentional tort against [the plaintiff]–using [the plaintiff's] trademarked name and his picture on a website accessible in Florida."  Id. at 1287.  The court reasoned that such allegations "satisfy Calder's effects test for personal jurisdiction–the commission of an *intentional* tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum."  Id. at 1288 (emphasis added).  Importantly, the court noted that "[t]he use was not negligent, but intentional."  Id. at 1287.

While the allegations in USPC's complaint, standing alone, might be sufficient to establish personal jurisdiction under Licciardello, Runsdorf has challenged those allegations in a personal declaration.  Runsdorf's declaration states that he has never dealt with any Georgia entity in relation to the subject matter of this suit, nor was he aware of the shape or color of TANDEM OB or NOREL SR before this suit commenced.  (Runsdorf Decl. ¶¶ 5-7.)  By disputing the Plaintiff's allegations,

Runsdorf has shifted the burden back to USPC to produce evidence supporting jurisdiction. <u>Meier</u>, 288 F.3d at 1269.[1]  USPC must offer "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions . . ." <u>Walker</u>, 53 F.3d at 1554.

Here, the Plaintiff has failed to produce such evidence.  In response to Runsdorf's motion to dismiss, USPC filed a declaration by Allison Krebs-Bensch, Vice President of USPC.  (Krebs-Bensch Decl.)  The Krebs-Bensch declaration does not contradict any of the statements made by Runsdorf in his declaration.  Only once does the Krebs-Bensch Declaration even mention Runsdorf, merely stating that after investigation, USPC "discovered" that Breckenridge was offering VINATE IC and TRITAL SR "at the direction of Laurence Runsdorf." (<u>Id.</u> at 2-3.)  This assertion does little more than restate the allegations in the complaint.  Further, it is not based on the personal knowledge of Ms. Krebs-Bensch.

To exercise personal jurisdiction over a corporation's officer acting in his official capacity, the officer's personal conduct must establish minimum contacts with the forum state.  <u>Girard v. Weiss</u>, 160 Ga. App. 295, 298 (1981) (no personal

---

[1]USPC argues that for the purposes of a motion to dismiss for lack of personal jurisdiction, "the facts alleged in the plaintiff's complaint are taken as true to the extent they are uncontroverted." (Pl.'s Memo. in Opp'n to Def.'s Mot. to Dismiss, at 4.)  As discussed above, however, the Plaintiff's allegations *are not* uncontroverted.  Runsdorf has disputed the Plaintiff's allegations in his personal declaration.

jurisdiction over corporate officer where corporation transacted business within forum state but officer had no contacts with forum state).  It is not enough that a defendant is an officer of a corporation that does business in the forum state.  Id.; See AT&T Mobility LLC v. C&C Global Enters., LLC, No. 1:06-CV-2733-TWT, 2007 WL 2001736, at *3 (N.D. Ga. July 3, 2007) (holding corporate officer defendant not subject to personal jurisdiction where plaintiff did not present "substantial evidence" that defendant had connections with forum state).  Here, Runsdorf's declaration disputes that he took any action purposefully directed at Georgia.  Regardless of Breckenridge's contacts with the forum, USPC must provide substantial evidence that Runsdorf himself engaged in conduct related to Georgia "such that he should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287 (1980).  Were it enough for USPC to allege that Runsdorf "directed" Breckenridge's sales activities,[2] personal jurisdiction over corporate officers would be coextensive with that of their corporate employers wherever those officers "directed" corporate business.  This is contrary to the holding of Girard, 160 Ga. App. at 298 (declining to exercise personal jurisdiction over

---

[2]As noted above, this assertion is not based on the personal knowledge of Ms. Krebs-Bensch.  Indeed, in its reply to the Defendants' joint motion to dismiss, USPC claims merely that the infringing conduct was "at the likely discretion of Runsdorf." (Pl.'s Br. In Opp'n to Defs.' Jt. Mot. to Dismiss, at 2.)

defendant officer where corporation had minimum contacts with forum but defendant officer did nothing "to avail himself of the privilege of doing business in Georgia."). For this reason, Ms. Krebs-Bensch's assertion that she "discovered" that Runsdorf had directed Breckenridge's activities is not sufficient to establish personal jurisdiction over Runsdorf.

Finally, the Plaintiff's reliance on Licciardello is misplaced.  Here, in contrast to Licciardello, USPC has not provided substantial evidence showing that Runsdorf did anything to intentionally harm a Georgia resident.  See Licciardello, 544 F.3d at 1288 (finding personal jurisdiction where defendant's actions were intentional and "expressly aimed at a specific individual in the forum.").   Indeed, Runsdorf's uncontradicted declaration states that he had no knowledge of the shape or color of either VINATE IC or TRITAL SR.   In Licciardello, the defendant purposefully directed his conduct toward the forum state by intentionally targeting a resident of that state.  Id.  By contrast, USPC has not produced substantial evidence that Runsdorf's conduct was intentionally aimed at USPC or that Runsdorf had contact with Georgia such that he should anticipate being haled into court there.  The Plaintiff's theory amounts to an assertion that Breckenridge, by intentionally copying USPC's trade dresses, has minimum contacts with Georgia under Licciardello.  As president of Breckenridge, "directing" its activities, USPC contends that Runsdorf shares these

contacts.  Runsdorf's declaration alleges, however, that he, unlike the defendant in Licciardello (and unlike Breckenridge), *did not* intentionally copy USPC's trade dresses.  The Plaintiff has not produced substantial evidence to the contrary.  Thus, Runsdorf has not transacted business in Georgia and does not have minimum contacts with Georgia sufficient to satisfy the Due Process Clause.  For this reason, personal jurisdiction over Runsdorf is improper.

    B.    <u>Defendants' Motion to Dismiss for Failure to State a Claim</u>

Both Defendants Runsdorf and Breckenridge move to dismiss the Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

        1.    <u>Lanham Act</u>

The Defendants move to dismiss the Plaintiff's Lanham Act claims.  To establish a claim for trade dress infringement under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the plaintiff must prove three elements.  <u>Bauer Lamp Co. v. Shaffer</u>, 941 F.2d 1165, 1170 (11th Cir. 1991).  First, the plaintiff must show "that the product is distinctive or has developed a secondary meaning; second, that the features in question are nonfunctional and third, that the resemblance between the two products is confusingly similar."  <u>Id.</u> (citing <u>AmBrit, Inc. v. Kraft, Inc.</u>, 812 F. 2d 1531, 1536 (11th Cir. 1986)).  The Defendants do not contend that the NOREL SR or TANDEM

OB trade dresses are functional.  Thus, the Court will analyze the first and third elements.

The Defendants first contend that the NOREL SR and TANDEM OB trade dresses have not acquired a secondary meaning.  "Secondary meaning 'is the connection in the consumer's mind between the mark and the product's producer, whether that producer is known or unknown.'"  Id. (quoting AmBrit, 812 F.2d at 1536).  Whether secondary meaning exists is a question of fact.  Conagra, Inc. v. Singleton, 743 F.2d 1508, 1513 (11th Cir. 1984) (citing Volkswagenwerk Aktiengesellschaft v. Rickard, 492 F.2d 474, 477-78 (5th Cir. 1974)).  Factors to consider in determining whether a trade dress has secondary meaning include "(1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture."  Id. (citing Brooks Shoe Mfg., Inc. v. Suave Shoe Corp., 716 F.2d 854, 860 (11th Cir. 1983)).  Further, in the Eleventh Circuit, "proof of intentional copying is probative evidence on the secondary meaning issue." Brooks Shoe Mfg., 716 F.2d at 860.

Here, the Plaintiff has pled sufficient facts to support a finding of secondary meaning.  USPC alleges that it has used the TANDEM OB and NOREL SR trade

dresses continuously and exclusively.  (Compl. ¶ 10.)  Further, USPC claims it has

spent thousands of dollars promoting its products and their appearance.  (Id.)  As a

result, "[t]he purchasing public has come to associate the TANDEM OB and NOREL

SR trade dresses with Plaintiff and Plaintiff's trade dresses have achieved significant

secondary meaning." (Id. ¶ 11.)  Finally, USPC alleges that the Defendants have

intentionally copied the TANDEM OB and NOREL SR trade dresses.  (Id. ¶¶ 19, 23.)

Although the Defendants point out that proof of intentional copying is not

"dispositive," this factor is indeed *probative* of the existence of secondary meaning.

Brooks Shoe Mfg., 716 F.2d at 860.  The Plaintiff has thus alleged facts sufficient to

support a finding of secondary meaning with respect to each factor cited above.

Although the Plaintiff may ultimately be unable to prove these facts, for purposes of

a motion to dismiss, the Court must accept these allegations as true.  Quality Foods

de Centro America, 711 F.2d at 994-95.  For these reasons, the Plaintiff's allegations

are sufficient to establish that the TANDEM OB and NOREL SR trade dresses have

achieved secondary meaning.

Next, the Defendants contend there is no likelihood of confusion between their

products and those sold by Breckenridge.  "Likelihood of confusion for purposes of

§ 43(a) of the Lanham Act is determined by analysis of a number of factors, including:

(1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark

and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods, i.e., retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) the most persuasive factor on likely confusion is proof of actual confusion." Conagra, 743 F.2d at 1514.  Like the secondary meaning inquiry, likelihood of confusion is a question of fact.  Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 832 (11th Cir. 1982).  For this reason, courts are hesitant to resolve the likelihood of confusion question on a motion to dismiss.  See Vulcan Golf, LLC v. Google Inc., 552 F. Supp. 2d 752, 769 (N.D. Ill. 2008) (noting "'likelihood of confusion' is a fact-specific inquiry best left for decision after discovery.").

In this case, USPC has alleged facts sufficient to establish likelihood of confusion.  USPC alleges that the Defendants' products are "directly competitive" with its own products.  (Compl. ¶ 14.)  Further, USPC asserts that the Defendants acted with an "intentional, and willful intent to mislead, deceive, and confuse the public."  (Id. ¶ 23.)  USPC alleges that "Defendants are using confusingly similar imitations of Plaintiff's TANDEM OB and NOREL SR trade dresses."  (Id. ¶ 17.)  Finally, the Plaintiff asserts that "Defendants' conduct . . . *has created* and will

continue to create a likelihood of confusion . . ." (Id. ¶ 22) (emphasis added). Although the Plaintiff may ultimately be unable to prove these claims, for purposes of a motion to dismiss under Rule 12(b)(6), the Plaintiff's allegations are true as a matter of law.

The Defendants argue that the presence of particular markings on the Plaintiff's products prevents confusion. Specifically, the Defendants note that the letters "US" are printed on both TANDEM OB and NOREL SR products. Those letters do not appear on the Defendants' products. Further, the Defendants point out that unlike VINATE IC, two blue rings encircle TANDEM OB capsules. Similarly, NOREL SR tablets are half-white and half-yellow; whereas the Defendants' TRITAL SR tablets are yellow throughout. The Defendants' argument thus focuses exclusively on the similarity factor of the confusion analysis. The distinctions noted by the Defendants, however, do not prohibit a finding of similar design, much less preclude a finding of likelihood of confusion as a matter of law. See AmBrit, 812 F.2d at 1540 ("[U]se of distinguishing word marks does not . . . preclude a finding of similarity of design."). The Plaintiff has alleged that its products are competitive with those of the Defendants, that the Defendants have intentionally copied the Plaintiff's trade dresses, that the appearance of the Defendants' products is confusingly similar, and, most importantly for the confusion analysis, that there is *actual* confusion as to the origin

of the Defendants' products.  Thus, the Plaintiff has pled facts supporting likelihood of confusion.  Because the Plaintiff has sufficiently pled secondary meaning and likelihood of confusion, the Plaintiff's Lanham Act claim should not be dismissed.

### 2.   Unfair Competition

The Defendants move to dismiss the Plaintiff's claim for unfair competition because the Plaintiff has failed to plead likelihood of confusion.  Claims for unfair competition require a showing of intent to deceive.  O.C.G.A. § 23-2-55.  Here, the Plaintiff alleges that the "Defendants' conduct demonstrates a bad faith, intentional, and willful intent to mislead, deceive, and confuse the public."  (Compl. ¶ 23.)  These allegations, along with those mentioned above, are sufficient to support the Plaintiff's claim under O.C.G.A. § 23-2-55.  For this reason, the Plaintiff's unfair competition claim should not be dismissed.

### 3.   Deceptive Trade Practices

Similarly, the Defendants move to dismiss the Plaintiff's state law claim for deceptive trade practices because the Plaintiff has failed to plead likelihood of confusion. Georgia's Uniform Deceptive Trade Practices Act requires a showing of likelihood of confusion.  Board of Regents v. Buzas Baseball, Inc., 176 F. Supp. 2d 1338, 1350-51 (N.D. Ga. 2001).  As discussed above, however, the Plaintiff has

sufficiently pled likelihood of confusion.  For this reason, the Plaintiff's deceptive trade practices claim should not be dismissed.

>        4.        Plaintiff's Dilution Claim

Finally, the Defendants move to dismiss the Plaintiff's trade dress dilution claim because USPC's trade dress is not registered.  Citing Diedrich v. Miller & Meier & Associates, Architects & Planners, Inc., 254 Ga. 734 (1985), the Defendants argue that registration is a prerequisite for claims under O.C.G.A. § 10-1-451.  Because the NOREL SR and TANDEM OB trade dresses are not registered, the Defendants argue that USPC cannot maintain a claim for dilution.  In Diedrich, the court noted that "registration of [a logo] as a service mark or trademark is a prerequisite to relief under O.C.G.A. §§ 10-450 and 451." Id. at 736.  Diedrich, however, addressed an action for trademark *infringement* under O.C.G.A. § 451(a), not trademark dilution under § 451(b).  Id. at 734.  Indeed, the language from Diedrich cited by the Defendants is not surprising given that § 451(a) specifically limits actions to "owner[s] of a trademark or service mark registered under this part."  O.C.G.A. § 10-1-451(a).

USPC, however, has asserted a trade dress *dilution* claim under § 451(b).  Unlike § 451(a), which provides a cause of action for infringement, § 451(b) does not explicitly require registration.  See O.C.G.A. § 10-1-451(b).  In Giant Mart Corp. v. Giant Discount Foods, Inc., 247 Ga. 775 (1981), the Georgia Supreme Court

construed an identically worded predecessor statute to § 451(b).  In doing so, the court held that § 106-115, the predecessor statute to § 451(b), "provides protection to *unregistered as well as registered* trade names which have been exclusively appropriated."  <u>Id.</u> at 686 (emphasis added).  While noting that actions for infringement require registration, the court distinguished those actions from dilution claims under § 451(b).  <u>Id.</u> at 685 (noting that under predecessor statute to § 451(b) "any entity using a registered or unregistered trade name may seek to have subsequent use by another of the same or similar trade name enjoined" where there is likelihood of dilution of quality of trade name).

Here, the Plaintiff seeks relief under § 451(b).  Unlike § 451(a), § 451(b) does not expressly require registration.  Further, in <u>Giant Mart</u>, the Georgia Supreme Court distinguished the registration prerequisites for infringement actions from those of dilution actions.  <u>Id.</u>  While infringement claims require that the mark at issue be registered, dilution claims do not.  For these reasons, the Plaintiff's trade dress dilution claim should not be dismissed.

IV.  <u>Conclusion</u>

For the reasons set forth above, the Court GRANTS Laurence Runsdorf's Motion to Dismiss [Doc. 9].  The Court DENIES Breckenridge Pharmaceutical, Inc. and Runsdorf's Joint Motion to Dismiss [Doc. 10].

SO ORDERED, this 16 day of September, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge